Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Ronald A. Guzman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 1557 | **DATE** | 9/5/2002 |
| **CASE TITLE** | USA ex rel JOSE L. SALAZAR vs. BLAIR LIEBACH, Warden | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] ENTER MEMORANDUM OPINION AND ORDER: Petitioner Jose Salazar's petition for writ of habeas corpus is denied in its entirety.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | SEP 0 9 2002 | |
| ✓ | Docketing to mail notices. | | date docketed | |
| ✓ | Mail AO 450 form. | | | |
| | Copy to judge/magistrate judge. | | | |
| TBK | courtroom deputy's initials | | date mailed notice | |

Document Number

31

U.S. DISTRICT COURT
CLERK

2 SEP -6 AM 11: 30

Date/time received in central Clerk's Office

mailing deputy initials

DOCKETED
SEP 0 9 2002

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, ex rel.<br>JOSE L. SALAZAR, | ) ) ) | |
| Petitioner, | ) ) | 01 C 1557 |
| v. | ) ) | Judge Ronald A. Guzmán |
| BLAIR LIEBACH, Warden, | ) ) ) | |
| Respondent. | ) | |

## MEMORANDUM OPINION AND ORDER

Petitioner Jose Salazar ("Salazar") is in the custody of Respondent Warden of the

Danville Correctional Center, Danville, Illinois. In 1993, Salazar was convicted of the offenses

of controlled substance trafficking and unlawful possession of a controlled substance with the

intent to deliver. Salazar was sentenced to concurrent terms of forty-four years imprisonment

and an assessed street value fine of $10,000,000. On January 20, 2000, the Illinois Appellate

Court vacated Petitioner's conviction and sentence for possession of a controlled substance with

intent to deliver. In all other respects, the judgment of the Circuit Court was affirmed. After

filing several post-conviction petitions, Salazar now petitions this Court for a writ of habeas

corpus pursuant to 28 U.S.C § 2254. Respondent has moved to dismiss on the grounds that each

claim is either non-cognizable, procedural defaulted, or without merit. For the reasons stated

below, the petition for writ of habeas corpus is denied.



# FACTUAL BACKGROUND[1]

On May 15, 1995, Illinois State Trooper, Dan Gillette ("Gillette") was traveling westbound on Interstate 80 when he observed a blue Honda in the eastbound lanes which appeared to be traveling in excess of the speed limit. There was construction along this stretch of the highway and the restricted speed limits was forty-five miles per hour. According to Gillette, his radar indicated that the vehicle was traveling six miles in excess of the speed limit. He crossed over to the eastbound lanes and after pursuing the car for three miles, he signaled to the driver of the blue Honda to pull over.

Salazar, the petitioner in the instant case, was driving the car. Armando Becerril ("Becerril") was the passenger in the car. Gillette asked both for their driver's licenses. Salazar accompanied Gillette back to the squad car. Salazar told the trooper that they were traveling from California to New York, he was vacationing in California for a couple of weeks, he borrowed the car from a cousin in California and now he was heading back to New York. Becerril was going to stay in New York for a couple of weeks and then drive the car back to California. A check of Salazar's driver license revealed its validity and it was confirmed that the car was registered in the name of the person named by Salazar as his cousin. When Gillette went back to the Honda, he returned Becerril's license and asked him where he was going. Becerril responded "Chicago."

According to Gillette, he noted a strong order of air freshener emanating from the car interior. He also noticed there was no luggage in the passenger compartment. Gillette issued a

---

[1] When considering a habeas corpus petition the Court presumes that the factual determinations of the state court are correct. 28 U.S.C. § 2254; *see Biskup v. McCaughtry*, 20 F.3d 245, 248 (7th Cir. 1994). Unless otherwise noted, we adopt the facts as set forth by the Illinois Appellate Court in *People v. Salazar, No.* 3-93-0907 (3rd Dist. Sept. 9, 1994).

warning ticket and told Salazar he was free to leave. However, before Salazar exited the squad car, Gillette asked him if he had any guns or drugs in the car. According to Gillette, Salazar responded "No, I shouldn't have." Salazar told the officer to go ahead and search the vehicle. Gillette filled out a standard written consent form which Salazar signed.[2] According to Gillette, when Salazar finished signing the form, his hands were trembling and he was perspiring.

Gillette called for back-up and another officer arrived. Gillette opened the trunk and found two nylon bags. In one of the bags, Gillette found a large number of $50 bills. Gillette also noticed that there was no space for a spare tire and the carpet was glued down. Moreover, fresh undercoating was noted on the underside of the car. He also observed that there was an unaccounted for space of about nine inches between the floor of the trunk and the underside of the car. Another trooper, Craig Graham ("Graham") arrived with the canine unit and conducted a "walk around" of the vehicle. The dog alerted to the right rear corner of the vehicle. While they were underneath the car, they noted very small holes through which they could see some type of packaging. According to Gillette, he asked Salazar how to access the compartment. Salazar told him that he did not know what he was talking about and repeated that he was only borrowing the car from his cousin.

Without asking permission from Salazar, Graham got a portable drill from his squad car and crawled under the Honda. As he was drilling into the underside of the car, a white powdery substance came down from the hidden compartment. The drill bit was also covered with the

---

[2] The consent form was printed in English on one side and in Spanish on the other. (Resp't's Answer, Ex B., Br. & Argument Def.-Appellant at 5). Salazar signed the Spanish side. *Id.* The form stated as follows: "I, Jose Salazar, hereby grant my permission to officers of the Illinois State Police and to other law enforcement officers assisting them to search the following: (description of the vehicle) including any part, compartment or trunk of the vehicle and the contents of any object or container found therein. I understand that I have the right to refuse to consent to the search described above and refuse to sign this form. I further state that no promises, threats, force or physical or mental coercion have been used to cause me to consent to the search described above or to sign this form." *Id.*

white substance. The officers recognized the substance as cocaine and a field test was positive. Both Salazar and Becerril were arrested. Becerril was found to have a loaded .380 caliber semi-automatic pistol under his hat. The car was towed to the police headquarters where the bumper was removed. The State Police found a .45 caliber handgun, ammunition, and 45 bricks of cocaine weighing more than 100 pounds.

Salazar and Becerril filed motions to suppress evidence and quash arrest. The motions were heard in a consolidated hearing and denied. Thereafter, both Salazar and Becerril hired new attorneys. Motions to sever and renewed motions to suppress were filed. The circuit court allowed Salazar and Becerril to reopen the suppression hearing and after taking additional testimony the renewed motion to suppress was denied. However, the motion to sever was granted and the cause proceeded to separate trials. Becerril was tried first and convicted. During Salazar's trial, both troopers, Gillette and Graham testified.[3] Additionally, the State presented the testimony of Manual Gallardo ("Gallardo") and Jorge Madrigal ("Madrigal"). Gallardo testified that he lived in California and he had an auto transmission repair business. He testified that between 1990 and 1992 he bought between 30 and 50 guns from Donald Hopkins. He further testified that he sold five of these guns to Jorge Madrigal: two .45 caliber handguns, two .380 caliber handguns and one .9 millimeter handgun. Gallardo identified documents reflecting the sale of a .45 and .380 handgun from Hopkins. The serial documents of these documents

_____

[3] Besides giving a history of the events occurring after the vehicle stop, both troopers acknowledged that they never asked either Salazar or Becerril for consent to drill into the storage compartment or to remove the rear bumper assembly. (Resp't's Answer, Ex B., Br. & Argument Def.-Appellant at 11). They also admitted that they never attempted to secure a warrant to search the vehicle, even though both occupants of the vehicle were under arrest, the keys of the car were in the officers' custody and no one else besides the members of the Drug Interdiction Team had access to or control over the vehicle following the stop. *Id.* at 11-12. Trooper Graham testified on June 30, 1993 that his dog, Thor, never made a false positive to any odor of a controlled substance. *Id.* at 16. Approximately four months earlier, the same trooper testified in a different pre-trial hearing that he could not recall a recent vehicle stop on Interstate 80 where his reliable dog, Thor, alerted to the presence of drugs, but where no drugs were actually found in the subsequent thorough search. *Id.* The defense counsel of that trial introduced evidence to the contrary that such occurrence had actually taken place a week earlier. *Id.* The Bureau Circuit Court characterized Trooper Graham's testimony "less than candid" and imposed discovery sanctions upon the State. *Id.* The Appellate Court upheld the imposition of sanctions. *Id.*; *see People v. Koutsakis*, 255 Ill. App. 3d 306 (3d Dist. 1994).

matched the serial numbers of the guns recovered from Becerril and from the compartment where the cocaine and the ammunition were also found.

Madrigal testified that he owned an auto body shop. He knew Gallardo through their businesses. Madrigal testified that through his business he came to know an individual who went by the name of Martin Arana. Madrigal identified Salazar as Arana. Madrigal also testified as to a series of transactions in which he obtained certain vehicles for Salazar and then built hidden compartments in the respective cars. Madrigal identified the blue Honda as looking like one of the cars on which he had worked. He also identified the hidden compartment as the one he had built at Salazar's request. Lastly, Madrigal testified that at one point Salazar had requested that he obtain five specific types of guns for the defendant and Madrigal bought these guns from Gallardo.

## PROCEDURAL HISTORY

On October 29, 1993, the jury found Salazar guilty of controlled substance trafficking and possession of a controlled substance with intent to deliver. On November 23, 1993, Salazar was sentenced to concurrent terms of forty-four years imprisonment and an assessed street value fine of $10,000,000. He appealed to the Illinois Appellate Court and raised three issues. First, he contended that the trial court erred in denying his motion to suppress because the law enforcement officers exceeded the scope of the consent when they drilled holes into the car and removed the rear bumper of the vehicle to search for suspected controlled substances. In a related argument, he also asserted that the State failed to show the troopers had probable cause to believe the car contained contraband sufficient to justify the intrusive search. Second, he claimed that the evidence was legally insufficient to support the conviction. Third, he argued

that the offense of unlawful possession of a controlled substance with the intent to distribute should be vacated as a lesser included offense of controlled substance trafficking. On September 9, 1994, the Illinois Appellate Court affirmed the judgment of the circuit court in an unpublished Rule 23 opinion order.

Salazar filed a petition for leave to appeal in the Illinois Supreme. Pointing out that both parties agree that the case involved an issue of first impression, Salazar mainly argued that his written consent for the police to search his car did not extend to the troopers' use of a cordless power drill to drill holes into a storage compartment on the underside of the car and to later disassemble the rear bumper unit of the vehicle at the Police Headquarters. He also argued that the State failed to establish probable cause to believe that Petitioner's vehicle contained contraband in order to justify a warrantless search, that the evidence was insufficient, and that the conviction of unlawful possession is a lesser included offense of the controlled substance trafficking. Therefore, Salazar raised the same three issues he raised on direct appeal. On December 6, 1994, the Illinois Supreme Court denied the petition for leave to appeal.

On June 30, 1995, Salazar filed a post conviction petition in which he raised the following claims. First, Salazar argued that his convictions were based on perjured testimony of Jorge Madrigal[4] and Trooper Graham.[5] Second, he argued ineffective assistance of counsel regarding the first hearing on the motion to suppress as to the failure to challenge the legality of the duration of the traffic stop, the subsequent unlawful seizure, and voluntariness of the consent. Third, Salazar argued insufficiency of evidence to prove him guilty. Lastly, he argued that the

---

[4] Jorge Madrigal testified on behalf of the State that in late 1991 and early 1992, Salazar purchased several vehicles and paid Madrigal to outfit each of the cars with a secret storage compartment. (Defendant-Appellant Post Conviction Petition filed on 6/30/95, *3). He also testified that on some unspecified date in early 1992, Madrigal sold Salazar five handguns. *Id.* at *4. Salazar attached affidavits, passport copies and a presentence investigation report in order to establish that he was in Columbia from August 11, 1991 to February 9, 1992 and therefore he was not in the United States from late 1991 to early 1992 as Madrigal testified at trial. *Id.*
[5] See second part of footnote 3 of this opinion for Graham's testimony.

convictions and the concurrent sentences are in substantial violation of his constitutional right to be free from multiple convictions and punishments for the same physical act.

On July 15, 1996, Salazar filed a *pro-se* Amended Petition for post conviction relief, after Salazar's trial and appellate counsel, Tasseff, withdrew, and Salazar was eventually appointed new counsel. The following new claims were added to the previous claims. First, he argued that he was denied effective assistance of counsel when his previous counsel, Tasseff, failed to challenge at the hearing on the renewed motion to suppress evidence the legality of the pretextual traffic stop, the unlawful temporary detention, the voluntariness and legality of the consent to search, the legality and duration of the traffic stop, and the discrepancies from the troopers in their report and testimonies. He also argued ineffective assistance of counsel for: failure to bring to the attention of the trial and appellate courts the discrepancies in the testimony of the State's witness Jorge Madrigal, failure to bring forth at the motion for new trial evidence which proved the perjury of Jorge Madrigal when he allegedly send his passport to attorney Tasseff, failure to file a motion to dismiss any of the two charges when one charge was a lesser included offense of the other charge, failure to instruct the jury about the lesser included offense, failure to respond to State's motion to cite additional authority, and failure to raise a discovery violation argument in a motion for new trial. Second, Salazar claimed that the prosecutor knowingly used the perjured testimony of Madrigal at trial to obtain a conviction against Petitioner. Third, he claimed prosecutorial misconduct in knowingly using perjured testimony of troopers Gillette and Graham at the motion to suppress the evidence. His fourth claim centered around discovery violations allegedly committed by the prosecutor. His fifth claim was a claim which was already raised previously: failure of his counsel to instruct the jury of the lesser included offense. Next, Salazar argued that his constitutional rights were violated when he was

charged and found guilty of possession of a controlled substance with the intent to deliver because this charge was a lesser included offense of controlled substance trafficking. In a related argument, he contended that his rights were violated because of multiple convictions and punishments were imposed for the same physical act. Lastly, Salazar raised the following claims: the stop of the vehicle was pretextual, trooper Gillette did not have probable cause or reasonable suspicion to detain him, trooper Gillette coerced him into signing the consent form and such consent was obtained after a request for a canine unit and trooper Gillette and the Illinois State Police used an overbroad and generalized consent to justify a "fishing and rummaging expedition."

On November 12, 1996, Salazar filed a Third Amended petition for post-conviction relief. This petition was almost identical to the previous one. Salazar only changed exhibits numbers and added a page. On November 14, 1996, Salazar filed a Second Amended petition for post conviction relief. Salazar added to his previous claims that the State sent a letter to Madrigal containing exculpatory evidence and the State failed to disclose this letter. Salazar again claimed Fourth Amendment violations because he did not voluntarily give consent to search, the trooper did not have an articulated suspicion, and consent was tainted by an illegal detention.

The State moved to dismiss all of Salazar's post-conviction petitions. On November 14, 1999, the judge held a hearing on these motions, and the judge addressed one claim at the time. All post-conviction petitions were dismissed except for one claim of the First Amended post conviction petition regarding a narrow sub-claim of the alleged ineffective assistance of counsel. The court granted Salazar leave to file a Fourth Amended petition with regard to issues of

constitutionality of dual convictions only.[6] On May 9, 1997, after an evidentiary hearing, all the remaining claims were also denied.

On June 23, 1999, Salazar appealed the dismissal of his post-convictions to the Illinois Appellate Court, Third District. Salazar raised the following issues. First, he argued that his conviction was obtained by the State due to the knowing use of the perjured trial testimony of Jorge Madrigal. Salazar also argued that the State committed discovery violations when it failed to protect him against surprise, unfairness, and inadequate preparation for trial. Next, he argued ineffective assistance of counsel because of counsel's failure to challenge: the illegal arrest, the prolonged duration of the traffic stop, the voluntariness of the consent, the excessive sentence, and the multiple charges and convictions for the same act. Additionally, Salazar argued ineffective assistance of counsel because his attorney failed to subpoena and present the testimony of Douglas Havlicek, Dorie Havlicek, Donald Hopkins, Harry Anderson, Carlos Mejia, Jaime Achury, Ancizar Gallego, Manuel J. Rebellon, Ellias A. Bohorquez, John N. Bedoya, Gloria Lozano and his attorney failed to subpoena Salazar's passport and immigration records. Salazar also argued he was denied effective assistance of counsel when his counsel failed to protect him against surprise, unfairness, and inadequate preparation for trial, failed to file a motion before trial requesting the State to complete the interview of Madrigal and failed to file a motion for a mistrial or trial continuance when new testimony was introduced at trial.

On January 20, 2000, recognizing that a post-conviction petitioner is limited to arguing constitutional claims that were not, and could not have been, raised previously, the Illinois Appellate Court ruled that Salazar's perjury claim was barred from consideration in the post conviction proceedings because there was no objection to Madrigal's testimony at trial or the

---

[6] Salazar never filed a Fourth Amended petition, but the issue was raised and argued during the subsequent evidentiary hearing.

perjury claimed was not raised in his post-trial motion or direct appeal. Salazar's claim that he was unfairly surprised by Madrigal's testimony and that the State failed to produce Madrigal for a complete pre-trial interview was also rejected by the Appellate Court because these claims were not raised at the trial level or on direct appeal. The court rejected all of the ineffective assistance of counsel claims finding them a matter of trial strategy or non-cognizable. Lastly, the Appellate Court vacated Salazar's conviction and sentence for possession of a controlled substance with intent to deliver.

On June 9, 2000, Salazar filed a petition for leave to appeal in the Illinois Supreme Court raising basically the same issues as in his brief for the Appellate Court.[7] On September 1, 2000, the Illinois Supreme Court denied the petition for leave to appeal.

On March 5, 2001, Salazar filed the instant habeas corpus petition.[8] Salazar first claims 1) ineffective assistance of trial counsel for a) failure to challenge the illegal arrest, b) failure to challenge the prolonged detention of the traffic stop, c) failure to challenge the voluntariness of the consent, d) failure to challenge the fact that the conviction was obtained due to the State's discovery violation, e) failure to provide an interpreter at trial, f) failure to subpoena and present several witnesses and Salazar's passport and immigration records, g) failure to challenge in a motion for new trial the fact that perjured testimony was used at trial and h) failure to challenge the excessive sentence. Next, Salazar also claims 2) ineffective assistance of appellate counsel for a) failure to challenge the illegal arrest, b) failure to challenge the prolonged detention of the traffic stop, c) failure to challenge the voluntariness of the consent, d) failure to challenge the fact the conviction was obtained due to the State's discovery violations, e) failure to subpoena

---

[7] Salazar raised one additional claim that his counsel was ineffective when he failed to provide him with an interpreter for trial.

[8] Based on eight grounds, Salazar argues that he is entitled to a reversal of his conviction or a remand to the Circuit Court for a new trial or a remand for a new sentencing hearing. The Court has reorganized his claims in an easier-to-follow manner.

and present several witnesses and Salazar's passport and immigration records, f) failure to challenge the fact that perjured testimony was used and g) failure to challenge the excessive sentence based on a wrong aggravating factor. The third claim raised in his habeas petition is that the trial court violated Salazar's equal protection and due process rights in denying his motion to suppress the evidence where the police officers exceeded the scope of the consent to search the automobile by drilling holes into the car and by removing the rear bumper assembly. Within the scope of this claim, Salazar argued a) the State failed to prove that the search of the vehicle was within the scope of the written consent given by Salazar and b) the State failed to establish probable cause. Lastly, Salazar's fourth claim is that the evidence was legally insufficient to support his conviction.

## DISCUSSION

The review of Salazar's petition for writ of habeas corpus is governed by 28 U.S.C. § 2254 ("section 2254") as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). A federal habeas court's role in reviewing state prisoner applications was modified by AEDPA to prevent "retrials" and to ensure that state court convictions are given effect to the extent possible under the law. *Williams v. Taylor*, 529 U.S. 362, 403- 04 (2000). Federal courts may grant a writ of habeas corpus when a person is held in custody under a state court judgment in violation of the United States Constitution. *Kavanagh v. Berge*, 73 F.3d 733, 735 (7th Cir. 1996). Habeas relief is only available for individuals who are contesting facts or duration of custody arising from a state criminal adjudication. *Moran v. Sondalle*, 218 F.3d 647, 650-51 (7th Cir. 2000). The habeas statute has many procedural requirements and affords relief only on

narrow substantive grounds. Therefore, before the Court addresses the merits of the claims raised, it must first determine whether Salazar's claims are properly before the Court.

## I. Procedural Default

A petitioner must exhaust all remedies available in state court and avoid procedural default under Illinois law. *Bocian v. Godinez,* 101 F.3d 465, 468 (7th Cir. 1996). Petitioner's failure to exhaust all state remedies bars consideration of the petition. *Rodriguez v. Peters,* 63 F.3d 546, 555 (7th Cir. 1995). Failure to raise all claims during the course of the state court proceedings bars consideration of those claims not raised. *Id.*

Each claim must be fully and fairly presented to the state courts, giving those courts the first opportunity to consider the claim. *Rodriguez v. Scillia,* 193 F.3d 913, 916 (7th Cir. 1999). "A petitioner presents his claims fully 'by pursuing all available avenues of relief provided by the state before turning to the federal courts.'" *Id.* at 916 (quoting *Kurzawa v. Jordan,* 146 F.3d 435, 440 (7th Cir. 1998)). The Supreme Court explained that "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel,* 526 U.S. 838, 845 (1999). In Illinois, "one complete round" is finished once the petitioner has presented his claims, whether on direct appeal or on post-conviction review, at each stage of the appellate process, up through and including the Illinois Supreme Court. *Id.* at 847-48.

A procedural default occurs when (1) the petition fails to raise an issue on direct or post-conviction review, or (2) the state court has disposed of the claim on an independent and adequate state law grounds. *See Rodriguez,* 63 F.3d at 555; *see also Coleman v. Thompson,* 501 U.S. 722, 729 (1991). Procedural default may be overlooked if the petitioner can show good cause for the default and actual prejudice resulting therefrom, or demonstrate that the failure to

consider the respective claim will result in a fundamental miscarriage of justice. *Coleman,* 501 U.S. at 750.

The cause prong of the cause-and-prejudice test must ordinarily turn on whether prisoner can show that some objective factor external to the defense impeded defense counsel's efforts to comply with state's procedural rule. *Murray v. Carrier,* 477 U.S. 478, 488 (1986).[9] The prejudice prong of the cause-and-prejudice test is demonstrated when the petitioner shoulders his or her burden of showing, not merely that the errors at trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with constitutional errors. *Ouska v. Cahill-Masching,* 246 F.3d 1036 (7th Cir. 2001) (citing *United States v. Frady,* 456 U.S. 152, 170 (1982)).

A fundamental miscarriage of justice occurs when a constitutional violation had probably led to the conviction of an individual who is actually innocent. *Thomas v. McCaughtry,* 201 F.3d 995, 999 (7th Cir. 2000). Without new evidence of innocence, even a meritorious constitutional claim is not enough to permit a federal court to reach the merits of a procedurally defaulted claim. *Schlup v. Delo,* 513 U.S. 298, 316 (1995). To be credible, such a claim requires petitioner to support his allegations by introducing new reliable evidence "whether it be exculpatory scientific evidence, trustworthy eyewitness accounts or critical physical evidence" which was not presented at trial. *Id.* The requisite probability is established by showing that the petitioner must show that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence. *Id.* at 327. This probability determination is a mixed question of law and fact. *United States ex rel. Bell v. Pierson,* 267 F.3d 544, 552 (7th Cir. 2001).

---

[9] For example, novelty of a constitutional claim at time of state court proceeding may give rise to cause for counsel's failure to raise the issue and therefore may permit entertainment of the claim in the subsequent federal habeas proceeding. *Reed v. Ross,* 468 U.S. 1, 14-16 (1984).

The State contends that a number of Salazar's claims are procedurally defaulted. Petitioner's claim 1 e) failure to provide an interpreter at trial was not raised in any direct appeal or post-conviction petition or appeal of the post-conviction petition. The first time this claim was raised was in the post-conviction petition for leave of appeal to the Supreme Court. The case law is clear that the requirement that a claim raised in a writ for habeas corpus must have been "fairly" presented to the state courts is not satisfied by the first-time presentation of the claim to a state appellate court under a procedure that, by state rule, allows discretionary review, unless there are "special and important reasons." *Castille v. Peoples*, 489 U.S. 346, 351 (1989). In his reply brief, Petitioner's asserts that the claim could not have been presented prior to an Appellate Court's ruling, without giving any reason or explanation for this assertion. Clearly the Petitioner has waived his claim of alleged ineffective assistance of trial counsel for failure to provide an interpreter at trial and therefore this Court is barred from considering it.

Next, Respondent argues that claims 2 a) ineffective assistance of appellate counsel for failure to challenge Petitioner's illegal arrest, 2 b) ineffective assistance of appellate counsel for failure to challenge the prolonged detention of the traffic stop, and 2 c) ineffective assistance of appellate counsel for failure to challenge the voluntariness of Petitioner's consent are procedurally defaulted because they were only raised in the Petitioner's post conviction petition for leave of appeal. A closer scrutiny of the record reveals that at least claims 2 b) and 2 c) were raised in the post conviction petition and at the appellate level of the post conviction petition. (*See* Resp't's Ex. F at C 126; Resp't's Ex. M at 35.) Additionally, they were raised in the petition for leave to appeal. (*See* Resp't's Ex. O at 11.)

Respondent additionally argues that these claims of ineffectiveness of appellate counsel were not presented to the Illinois Appellate Court. In light of the above, the Court takes this to

mean that the claims were not raised on direct appeal. It is true that an issue which could have been raised on direct appeal, but was not, is waived. *Gray v. Greer,* 707 F.2d 965, 967 (7th Cir. 1983). However, Respondent seems to overlook the fact that Petitioner's counsel was the same at trial and on direct appeal. It was only later, at the post conviction level, that Petitioner represented himself and subsequently he was appointed another counsel. It is highly unlikely that his trial counsel would argue on direct appeal that he, himself, was ineffective during the trial.[10] Therefore, the Court holds that claims 2 b) and 2 c) are not procedurally defaulted.

Respondent's contention that claim 2 a) ineffective assistance of appellate counsel for failure to challenge the arrest is procedurally defaulted is not supported by the record. While it is true that it does not have its own heading in the petition for post conviction, an examination of the record indicates that Petitioner did intertwine it with other issues he raised. (*See* Resp't's Ex. H at C 287; Resp't's Ex. I at C 303.) Moreover, the claim was clearly raised in the appeal of the post conviction, and the Court of Appeals ruled on its merits. (*See* Resp't's Ex. M at 35; Resp't's Ex. N at 5.) Lastly, Petitioner raised the same claim in his petition for leave to appeal. (*See* Resp't's Ex. O at 11.) Therefore, claim 2 a) is not procedurally barred.

While claims 2 g) and 1 h) ineffective assistance of trial and appellate counsel for failure to challenge the excessive sentence were raised on appeal of the post conviction petition and in the petition leave to appeal to the Supreme Court, Salazar did not raise it in the original or any subsequent post conviction petitions. (*See* Resp't's Ex. O at 19, 44.) Since these issues could have been raised in the initial post-conviction petition, Salazar's attempt to circumvent the

---

[10] The Seventh Circuit has recognized that "it would be most difficult if not professionally awkward to require a lawyer to argue on appeal his own ineffectiveness." *Riner v. Owens,* 764 F.2d 1253, 1257 (7th Cir. 1985). While it is true that the *Riner* court have given great weight to the fact that the attorney in question was also representing a co-defendant, the court concluded that "identity of trial and appellate counsel can constitute sufficient cause to meet the first element of the cause and prejudice standard." *Id.; see also Guinan v. United States,* 6 F.3d 468, 472 (7th Cir. 1993).

procedural requirements fails and results in his waiver of such claim. In his reply, Salazar states that the trial judge who ruled on his post conviction petitions entertained his 1 h) claim. He attempts to prove his assertion by pointing to the May 9 order. While it is true that the order contains language that "ineffectiveness of counsel for sentencing is denied," a review of the transcript of the courtroom proceedings indicates that the court addressed Petitioner's claim of ineffective assistance of counsel for allowing double convictions to be entered. (*See* Resp't's Ex. J at PCR 177.) Excessive sentencing based on a wrong aggravating factor is different than excessive sentencing based on one offense being a lesser included offense of the other. Therefore, the Court holds that the issues of whether his appellate or trial counsels (which happen to be one and the same) were ineffective for failure to challenge the excessive sentence are procedurally defaulted.

Claims 1 d) and 2 d) ineffective assistance of trial and appellate counsel for failure to challenge that the conviction was obtained due to the State's discovery violation are procedurally defaulted because the Petitioner raised them only in his post conviction petition and post conviction petition for leave of appeal. Petitioner claims that he filed these claims in his appeal of the dismissal of the post conviction petition when he argued that his conviction was unfairly obtained by the State and he was not protected against surprise, unfairness and inadequate preparation for the trial. (*See* Resp't's Ex. M at 30.) In the course of that argument he argued that the State committed discovery violations when it failed to produce a proper interview from Madrigal. (*See id.* at 32.) At no point during that discussion did Petitioner contend that his counsel was ineffective for failure to challenge that the conviction was obtained due to the State's discovery violation.[11] Therefore, claims 1 d) and 2 d) are procedurally defaulted.

---

[11] While noting that a federal court need not scour the record to find and support claims for a *pro se* petitioner, *see e.g. Johnson v. Tally*, 47 F. Supp. 2d 943, 953-54 (N.D. Ill. 1999), the Court remarks that Salazar complained in his appellate brief the his lawyer should have "established how, where and when any fact occurred."

Claims 1 g) and 2 f) ineffective assistance of trial and appellate counsel for failure to challenge in a motion for a new trial the fact that perjured testimony was used at trial were also raised only in the post conviction petition and the post conviction petition for leave to appeal. Salazar has failed to present these issues to the Appellate Court of Illinois. Petitioner contends that he raised these issues on appeal and points to the argument that claims that his conviction was obtained by the State due to knowing use of perjured testimony. Clearly, this is a different claim. The failure to appeal these ineffective assistance of trial and appellate counsel claims clearly results in a procedural default. *See Jenkins v. Gramley*, 8 F.3d 505, 507-08 (7th Cir. 1993).

Therefore, claims 1 d), 1 e), 1 g), 1 h), 2 d), 2 f) and 2 g) are procedurally defaulted. However, as previously mentioned, federal courts have the power to look beyond a state procedural default. A prisoner may obtain habeas corpus relief by showing cause for and actual prejudice from the default. *Riner v. Owens*, 764 F.2d 1253, 1256 (7th Cir. 1985) (citing *Engle v. Isaac*, 456 U.S. 107, 129 (1982)). It has also been acknowledged that in certain circumstances ineffective assistance of counsel to preserve properly the claim for review in state court will suffice to constitute "cause" to excuse a procedural default. *Edwards v. Carpenter,* 529 U.S. 446, 451 (2000). However, such a claim may itself be procedurally defaulted, and, unless the state prisoner can satisfy the cause and prejudice standard for the procedurally defaulted ineffective assistance of counsel claim, that claim may not serve as cause for another procedurally defaulted claim. *Id.* at 452. Unfortunately, Salazar has failed to make any attempt to establish any of the

(*See* Resp't's Ex. M at 32.) This conduct about alleged pre-trial failures is not the same as the conduct complained of in his habeas corpus petition. Also, in a later argument, Salazar contended that he was denied effective assistance of trial counsel when his counsel failed to protect him against surprise, unfairness, and inadequate preparation for trial, failed to file a motion before trial requesting the State to complete the interview of Madrigal and failed to file a motion for a mistrial or trial continuance when new testimony was introduced at trial. (*See id.* at 50.) However, this does not help Petitioner either. At no time when making these arguments, did he mention failure of trial or appellate counsel to challenge the alleged discovery violation.

prongs of the cause and prejudice test. The Court is ever mindful that it is up to each party, not the Court, to construct its arguments. *Doherty v. City of Chicago*, 75 F.3d 318, 324 (7th Cir. 1996).

The second exception to the procedural default requirement applies to a narrow class of cases and implicates a miscarriage of justice. As previously enunciated, when a refusal to consider constitutional claims which are procedurally barred would result in a fundamental miscarriage of justice, then the court should consider the merits of these claims. Unfortunately, Petitioner's attempt to argue a fundamental miscarriage of justice with respect to the procedurally barred claims simply amounts to citing *Schlup* and *Coleman*. It is the habeas petitioner's duty to present the issues clearly and to support them with appropriate authority. *United States ex rel. Rickard v. Sternes*, 149 F. Supp. 2d 437, 449 (N.D. Ill. 2001). Simply citing a case without properly applying it to the facts of the case at hand does not constitute shouldering of the Petitioner's burden. An undeveloped argument speaks to its paucity and the court may refuse to consider it. *See United States v. Jones*, 224 F.3d 621, 626 (7th Cir. 2000). Again, it is not the court's duty to construct Salazar's argument for him. *Rickard*, 149 F. Supp. 2d at 449. Petitioner has completely failed to demonstrate a fundamental miscarriage of justice because he has not shown that he is actually innocent of the crime and that it is more probable than not that no reasonable juror would have convicted him but for the alleged constitutional violations. As a result, the procedural default of claims 1 e), 1 g), 1 h), 2 d), 2 f) and 2 g) is not bypassed by any of its exceptions.

## II. Noncognizable Constitutional Claim

Salazar's seventh ground in support of his habeas petition is that the trial court violated his constitutional rights when it denied his motion to suppress the evidence where the police officers exceeded the scope of the consent to search the automobile by drilling holes into the car and by removing the rear bumper assembly to search for suspected controlled substances.[12] Respondent argues that the above claim is a noncognizable constitutional claim for federal habeas review.

"In *Stone v. Powell*, 428 U.S. 465, 96 S. Ct. 3037, 49 L.Ed.2d 1067 (1976), the Supreme Court established a general rule that criminal defendants may not seek collateral review of Fourth Amendment exclusionary rule claims under § 2254 if they received 'an opportunity for full and fair litigation of' their Fourth Amendment claims in state court." *Turentine v. Miller*, 80 F.3d 222, 224 (7th Cir. 1996). "That is because even if there has been an illegal search or seizure, there is no constitutional right to be vindicated through the writ of habeas corpus–there is no *individual* right to have improperly gathered evidence excluded from a criminal trial." *Holman v. Page*, 95 F.3d 481, 489 (7th Cir. 1996). The *Stone v. Powell* holding is based on the Court's belief that the incremental benefit of marginally deterring future Fourth Amendment violations was outweighed by the costs of applying the exclusionary rule on habeas review. *Weber v. Murphy*, 15 F.3d 691, 693 (7th Cir. 1994); *United States ex rel. Bostick v. Peters*, 3 F.3d 1023, 1026 (7th Cir. 1993).

Respondent asserts that because Petitioner was given the opportunity to litigate fully and fairly his claim through the hearings on his motions to suppress, the ensuing litigation meets the "full and fair" requirements. Petitioner, on the other hand, argues that he was not provided a full

---

[12] In the course of this argument, Petitioner first claims that the State failed to prove that the search of the vehicle was within the scope of the written consent given by Salazar. In a related argument, he also claims that the state failed to establish that there was probable cause to believe that the vehicle contained contraband.

and fair opportunity to litigate his Fourth Amendment claim because of the alleged perjured testimony of officer Graham regarding the accuracy of his trained dog to make positive alerts to the presence of drugs at the hearings on the motions to suppress.

A petitioner has received a full and fair opportunity to litigate his claim when: (1) he has clearly informed the state court of the factual basis for his claim and he has argued that those facts amount to a violation of the Fourth Amendment and (2) the state court has carefully and thoroughly analyzed the facts and applied the proper constitutional law to the facts. *Terry v. Martin*, 120 F.3d 661, 664 (7th Cir. 1997). The Court addresses each issue in turn.

In the case at hand, it is clear that the first prong of the test is met. Petitioner was afforded the opportunity to inform the trial court of the factual basis of his claim. The trial court conducted not one, but two suppression hearings, during which both Petitioner and Respondent were given an opportunity to present evidence concerning the obtaining of the evidence and the subsequent arrest. The prosecution presented the testimony of officers Graham and Gillette, and the Petitioner had a chance to vigorously cross-examine these witnesses. Petitioner's focus on the alleged perjured testimony of officer Graham in relation to the accuracy of his trained dog and the argument that neither the defense counsel nor Petitioner knew that trooper Graham "was lying under oath" address the probable cause issue, not the scope of the consent issue. Therefore, Petitioner not only had the opportunity to litigate his claim, but he also took advantage of that opportunity by arguing that the search exceeded his written consent.[13]

Second, the Court must determine whether the facts were carefully and fully analyzed in the state court proceedings and whether the proper constitutional case law was applied to the

---

[13] According to Petitioner's brief and argument on direct appeal, the officers admitted that the wording of the consent form did not authorize the drilling of holes into the storage compartment or removing the rear bumper assembly. They also admitted that they never asked either Salazar or Becerril for consent to drill or to remove the bumper. Finally, they acknowledged that at no time they attempted to secure a warrant (see Respondent's Exhibit B, page 8).

facts of the case. On direct appeal, in an unpublished order, the Illinois Appellate Court had devoted over five pages to a recitation of the facts of the case. Except for pointing out that the court has not commented on the issue of the alleged perjured testimony of officer Graham, the Petitioner's does not argue that the any of the court's material factual findings are unsupported by the record. However, he argues that the intrusive search exceeded the scope of the consent under the "objective reasonable standard" enunciated in *Florida v. Jimeno*, 500 U.S. 248 (1991), therefore he implicitly argues that the Court has not applied the proper constitutional standard.

To support his argument, Petitioner asserts that the Appellate Court's opinion cannot be reconciled with *United States v. Garcia*, 897 F.2d 1413 (7th Cir. 1990), which, he claims, ruled that the scope of the motorist's consent to search did not include the officer's removal of vehicle door's panels. A closer reading of *Garcia* would reveal that the Seventh Circuit held that "[w]ithout more, police can only search areas where [weapons or drugs] may reasonably be expected to be found." *Garcia*, 897 F.2d at 1419. The court continued by stating that "[t]he opening of door panels is not *normally* included in this set of areas to be searched." (emphasis added). *Id.* The Seventh Circuit concluded that in *Garcia* the dismantling of the doors was justified by probable cause.[14] Anticipating this issue, the Petitioner next argues that the State

---

[14] One cannot help to notice the similarities between *Garcia* and the case at hand. In *Garcia*, two Hispanic males were traveling on an Illinois highway at 50 miles per hour in a construction zone which had a posted speed limit of 45 miles per hour. *Garcia*, 897 F.2d at 1415. The car had out-of-state license plates. *Id.* The driver of the car informed the officer who stopped the car that he borrowed the truck from someone else. *Id.* at 1415-16. Noticing that both individuals seemed apprehensive and nervous while they were questioned and the passenger was making some furtive movements in the glove compartment, the officer proceeded to issue a warning ticket and asked the driver if there are any drugs or weapons in the vehicle. *Id.* at 1416. When both the driver and the passenger denied the presence of these items, the officer asked, "Do you mind if I take the look?" *Id.* During the search, the officer's suspicions were aroused when he noticed the lack of windows cranks and door handles on both doors. *Id.* Upon closer examination of the door panels, the officer observed grey packages wedged inside the door. *Id.* At this point, they proceeded with the removal of the driver's side door panel and found ten packages of marijuana. *Id.* Both the driver and the passenger were placed under the arrest and the truck was impounded. *Id.* During the subsequent search, the police officers also discovered marijuana concealed behind false sidewalls in the bed of the truck. A total of approximately 100 pounds of marijuana was discovered in the truck. *Id.* In light of all these facts , the Seventh Circuit determined that the visual observations established probable cause for the troopers to extend their search and take apart the door. *Id.* at 1420.

failed to establish that there was probable cause to believe that the vehicle contained contraband and that the warrantless search was therefore unjustified.

As previously mentioned, the positive alert of the trained dog to the rear of the car is the focus of Petitioner's reply argument. The allegation that trooper Graham "was lying under oath" about the accuracy of his trained dog is not sufficient to establish that there was not probable cause to believe that the vehicle contained contraband. Apart from the positive alert of the trained dog, the officers in the case at hand were presented with two individuals speeding on the highway in excess of the speeding limit. They apparently gave conflicting stories as to where they were heading; one said "New York," the other one said "Chicago." The officer noted a strong odor of air freshener emanating from the car's interior and no luggage in the passenger compartment. When Salazar signed the consent form his hands were trembling and he was perspiring. Upon a search of the trunk, the police officer found two nylon bags. One of those bags contained a large number of $50 bills. More importantly, the officer noted no spare tire compartment, a glued carpet, fresh undercoating on the underside of the car and an unaccounted space of approximately of nine inches between the floor of the car and the underside of the car. While examining underneath of the car, the officers also noted small holes through which they could see some type of packaging. Taken cumulatively, all these visual observations amounted to probable cause to extend their search. As the Appellate Court noted, the officers employed "minimally intrusive means" and drilled two small holes into the underside of the car. Upon confirmation of the presence of drugs in the hidden compartment, the car was impounded and its rear bumper was disassembled.

The Supreme Court has held that "when a legitimate search is under way . . . nice distinctions between . . . glove compartments, upholstered seats, trunks, and wrapped packages,

22

. . . must give way to the interest in the prompt and efficient completion of the task at hand." *United States v. Ross*, 456 U.S. 798, 821 (1982). The Supreme Court has then concluded that police officers, who had legitimately stopped a vehicle and who had probable cause to believe that contraband was concealed somewhere within it, could conduct a warrantless search of the automobile as thorough as a magistrate could authorize by warrant, since the scope of a warrantless search of an automobile is not defined by the nature of the container in which the contraband is secreted, but rather, is defined by the object of the search and places in which there is probable cause to believe that it may be found. *Id.* at 824 (overruling *Robbins v. California*, 453 U.S. 420 (1981) and modifying *Arkansas v. Sanders*, 442 U.S. 753 (1979)). Additionally, the Seventh Circuit has held that police officers, who obtain consent to search a vehicle or any container found therein, may open any containers found in the vehicle, provided that the container is capable of holding the object of the search and that the opening of the container does not involve *unnecessary* infliction of damage. *United States v. Torres*, 32 F.3d 225, 232 (7th Cir. 1994) (citing *United States v. Martel-Martines*, 988 F.2d 855, 858 n.3 (8th Cir. 1993), which held use of screwdriver to puncture small hole in metal compartment hidden underneath truck bed was reasonable). Therefore, the Illinois Appellate Court applied the proper constitutional law when it affirmed the circuit court's denial of Salazar's motion to suppress, and habeas relief based on this claim is also denied.[15]

Thus, the Court holds that Salazar's seventh ground in support of his habeas petition, i.e., that the trial court violated his constitutional rights when it denied his motion to suppress evidence, is a noncognizable claim. As to the remaining claims that have not been procedurally

---

[15] The Court also notes that even if it found this claim to be cognizable and were to proceed to address the merits of this claim, the Petitioner has failed to show how the state court's adjudication was either (1) contrary to federal law as determined by the Supreme Court, or (2) an unreasonable application of federal law as determined by the Supreme Court. Nor does he establish that the state court's decision was based on an unreasonable determination of the facts given the evidence in the record.

defaulted or are not otherwise noncognizable, the door to a consideration on the merits under the standards established by section 2254(d) has been opened.

### III. Merits of Petition

A federal habeas corpus review of the state court's determinations is limited. Under 28 U.S.C. § 2254, a petitioner must demonstrate that the claim was adjudicated on the merits in state court and "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

The "contrary to" provision pertains to questions of law which the court reviews *de novo*. *Schaff v. Snyder,* 190 F.3d 513, 522 (7th Cir. 1999). The "unreasonable application" provision applies to mixed questions of law and fact, to which the federal court grants deference to reasonable state court decisions. *Schaff,* 190 F.3d at 522-23. Under section 2254(d)(2), the "unreasonable determination of the facts" language relates to pure questions of fact. *Hall v. Washington,* 106 F.3d 742, 752 (7th Cir. 1997). Moreover, section 2254 instructs the reviewing federal habeas court to presume that the state court's factual determinations are correct unless petitioner can rebut the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Schaff,* 190 F.3d at 521.

Under the "contrary to" clause, a federal court is "free to express an independent opinion" on whether a state court has deviated from the constitution on a legal question in contravention of United States Supreme Court precedent. *Lindh v. Murphy,* 96 F.3d 856, 861 (7th Cir. 1996) (en banc), *rev'd on other grounds,* 521 U.S. 320 (1997). This has been

interpreted to mean that a federal habeas court may grant relief if the state court (1) arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or (2) decides a case differently than the Supreme Court has decided on a set of materially indistinguishable facts. *Williams*, 529 U.S. at 405.

Under the "unreasonable application" provision, a federal habeas court cannot express the same type of independent opinion allowed under the "contrary to" clause. *Lindh*, 96 F.3d at 871. When determining whether the state court's assessment was "unreasonable," the federal courts must "take into account the care with which the state court considered the subject." *Id.* If the state court offers a "responsible, thoughtful answer" after "a full opportunity to litigate" the issue, a federal habeas court must accept that answer as "adequate to support the judgment" even if it believes the state court decision is wrong. *Id.* However, a federal court may grant relief if the state court identifies the correct legal principle from among Supreme Court decisions, but unreasonably applies that principle to the facts of the petitioner's case. *Williams*, 529 U.S. at 412-13. When determining an unreasonable application of clearly established federal law, an objective standard should be employed. *Id.* at 409. Most importantly, for habeas corpus review purposes, an unreasonable application of federal law is different from an incorrect application of federal law. *Id.* at 410.

## A. Ineffective Assistance of Counsel

Most of Salazar's claims which the Court has determined are not procedurally defaulted contend that his trial and appellate counsel was ineffective. Specifically, the following claims are not procedurally barred: 1 a) and 2 a) ineffective assistance of trial and appellate counsel for failure to challenge the illegal arrest, 1 b) and 2 b) ineffective assistance of trial and appellate

counsel for failure to challenge prolonged detention of traffic stop, 1 c) and 2 c) ineffective assistance of trial and appellate counsel for failure to challenge the voluntariness of the consent, 1 f) and 2 e) ineffective assistance of trial and appellate counsel for failure to subpoena and present several witnesses and Salazar's passport and immigration records.

Ineffective assistance of counsel claims are governed by the familiar standard of *Strickland v. Washington*, 466 U.S. 668 (1984). Salazar bears a heavy burden in demonstrating an ineffective assistance of counsel claim. *Drake v. Clark*, 14 F.3d 351, 355 (7th Cir. 1994). He must demonstrate that (1) his counsel's performance was deficient, meaning that it fell below objective standards for reasonably effective representation under "prevailing professional norms" and (2) the deficient performance prejudiced the defense, meaning that but for the deficient representation, the result of the trial would have been different. *Strickland,* 466 U.S. at 687-88, 694. A failure to establish either prong results in a denial of the ineffective assistance of counsel claim. *See Hough v. Anderson,* 272 F.3d 878, 890 (7th Cir. 2001).

The court views the attorney's performance deferentially, particularly counsel's choice of strategies. To establish the deficiency of counsel's performance, Salazar must overcome the strong presumption that "the challenged action might be considered sound trial strategy." *Id.* at 689. The Court considers counsel's effectiveness under the totality of the circumstances. *Drake,* 14 F.3d at 355. "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Strickland,* 466 U.S. at 691. Also, a record that is silent as to an attorney's rationale coupled with a speculation that a different outcome was possible will not displace the heavy presumption that counsel made reasonable tactical decisions in carrying out his or her representation. *See United States v. Traeger,* 289 F.3d 461, 471 (7th Cir. 2002).

Nevertheless, performance may be deemed insufficient when counsel omits a "significant and obvious" issue without a legitimate strategic reason for doing it. *See Mason v. Hanks*, 97 F.3d 887, 893 (7th Cir. 1996). Only if the ignored claims were "clearly stronger than those presented [would] the presumption of effective assistance of counsel be overcome." *Id.* Also, the cumulative effect of counsel's acts or omissions "may be substantial enough to meet the *Strickland* test." *United States ex rel. Kleba v. McGinnis*, 796 F.2d 947, 958 (7th Cir. 1986). Differently stated, "performance is about picking the battles [while] prejudice looks at whether winning the battle would have made a difference in the outcome of the war." *Howard v. Gramley*, 225 F.3d 784, 791 (7th Cir. 2000).

Finally, in a federal habeas review of a state criminal judgment, the state court's determination as to the question of effectiveness of counsel is not a finding of fact binding on the federal court to the extent stated by 28 U.S.C. § 2254(d). *Strickland*, 466 U.S. at 698. The claim of ineffectiveness of counsel "is a mixed question of law and fact." *Id.* As previously enunciated, the "unreasonable application" provision applies to mixed questions of law and fact. *Schaff*, 190 F.3d at 522-23. Therefore, the question presented is whether the state court's adjudication of Salazar's claims involved an unreasonable application of the ineffective assistance of counsel standard under *Strickland*.[16] It must be noted that a writ of habeas corpus may not be issued simply because it can be concluded that the relevant state-court decision applied *Strickland* erroneously or incorrectly. Rather, the application must also be unreasonable. *Roche v. Davis*, 291 F.3d 473, 481 (7th Cir. 2002).

---

[16] Petitioner argued that this Court should review his ineffectiveness of counsel claims because the State courts failed to consider "clear and convincing evidence." It is clear that Salazar relies on the incorrect standard. It appears that Petitioner tries to apply either § 2254(d)(2), the "unreasonable determination of the facts" language which relates to pure questions of fact and 28 U.S.C. § 2254(e)(1) which instructs the reviewing federal habeas court to presume that the state court's factual determinations are correct unless petitioner can rebut the presumption by clear and convincing evidence.

A review of the record makes clear that Salazar's trial and appellate counsel was not ineffective because either the counsel's conduct during trial or appellate proceedings cannot be found unreasonable or Petitioner was not prejudiced such that it would warrant setting aside his conviction or ordering a new trial.

### 1. Trial Counsel

Ground one of the petition for writ of habeas corpus claims 1 a) ineffective assistance of trial counsel for failure to challenge the illegal arrest, 1 b) ineffective assistance of trial counsel for failure to challenge prolonged detention of traffic stop and 1 c) ineffective assistance of trial counsel for failure to challenge the voluntariness of the consent. To support his claims, Salazar first focuses on alleged time discrepancies between the time when the consent form was signed and the time when the arrest was reported.[17] Then, he narrates his version of the events and sporadically quotes from a trial judge's order which allowed a new hearing on the motion to suppress the evidence.[18] The judge did not allow Mr. Taseff to present any arguments related to the alleged pretextual stop because that was an issue which the previous attorney had already addressed. However, it seems that he allowed Mr. Taseff an opportunity to argue issues relating to the scope of consent, lack of consent, and duration of the stop. (*See* Resp't's Ex. J at PCR 110-11.) Nevertheless, at the ensuing hearing, Mr. Taseff limited his argument only to the scope of the consent issue. Salazar claims that Mr. Taseff's failure to challenge (1) the legality of the arrest, (2) the duration of the traffic stop, and (3) the voluntariness of the consent amounted to ineffectiveness assistance of counsel.

---

[17] Petitioner points out that the arrest report indicated that the arrest took place at 3:20 p.m., the tow-in report indicated 3:30 p.m. as the time when the vehicle was towed and the consent form was signed at 3:31 p.m. As the consent form was signed by the Petitioner, while the other forms were signed by the police officers, it is clear that there is the possibility that the Petitioner's watch was not necessarily synchronized with the trooper's watch.

[18] The state court held an original hearing on the motion to suppress evidence when Petitioner was represented by another attorney. This Court also notes that despite being essential to Petitioner's argument that his counsel was ineffective when he allegedly misunderstood the judge's rulings, neither party has attached a copy of the trial's judge order which allowed a renewed hearing.

Both the trial and the appellate court examined Petitioner's claims of ineffective assistance of counsel in his post-conviction proceeding and concluded that Mr. Taseff was not ineffective. In reaching their conclusions, both courts addressed the claim on the merits and applied the proper *Strickland* standard for effective assistance of counsel. Both courts decided that the decision not to argue the above issues was a matter of trial strategy.[19] Accordingly, this court will respect that conclusion unless unreasonable. "*Strickland* builds in an element of deference to counsel's choices in conducting the litigation; § 2254(d)(1) adds a layer of respect for a state court's application of the legal standard. . . . [O]nly a clear error in applying *Strickland*'s standard would support a writ of habeas corpus." *Holman v. Gilmore*, 126 F.3d 876, 881-82 (7th Cir. 1997).

Petitioner argues that this Court should review this claim because the State courts unreasonably failed to consider (1) "clear and convincing" evidence proving that he did not voluntarily sign the consent and (2) attorney Taseff's own testimony that the failure to address the issues was a product of his misapprehension of the court's ruling. First, other than Petitioner's own assertions, there is no "clear and convincing" evidence that Petitioner was forced to sign the consent form or that he did not freely and voluntarily consent to have the police search his car.

Second, though there is some evidence that trial counsel may have misapprehended the judge's order as far as being allowed to argue the legality of the arrest and the length of the traffic stop, Petitioner has failed to demonstrate the second prejudice prong of the *Strickland* test. Petitioner's statements that "there is a reasonable probability that the outcome of the proceedings

---

[19] Additionally, the Illinois Appellate Court pointed out that trial counsel correctly believed that the trial judge already decided the issue of the voluntariness of Petitioner's consent at the original suppression hearing and again it was a matter of trial strategy not to confront the judge with an issue which he had already decided. (*See* Resp't's Ex. N at 5-6.)

would have been different,"are conclusory and do not shoulder his burden of proving prejudice. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 679. The record before the Court does not undermine its confidence that should the issues have been presented at the hearing on the renewed motion to suppress, the evidence of 110 pounds of cocaine would have been suppressed because of the alleged prolonged duration of a traffic stop or because of the alleged illegal arrest. The record also shows that Petitioner's counsel, Mr. Taseff, conducted a vigorous and thorough defense in the face of overwhelming evidence. He won a rehearing on the motion to suppress evidence, which in itself is unusual. At this renewed hearing, he raised a "significant and obvious" issue: whether the drilling of holes in the underside of the car exceeded the scope of the consent. Clearly, the omitted issues were not stronger than those presented. As a result, Petitioner suffered no prejudice from any of the counsel's alleged errors enumerated above.

The Court therefore finds there is no clear error in the Appellate Court's evaluation of the effectiveness of petitioner's counsel and accordingly there is no need to disturb it. Even if this Court notes that there is a dispute as to whether the failure to raise the above three issues was due to trial strategy or a mistaken apprehension of the judge's order, it is the prejudice prong which truly disposes of Petitioner's first three claims.

Ground four of the petition for a writ of habeas corpus claims 1 f) ineffective assistance of trial counsel for failure to subpoena and present several witnesses and Salazar's passport and immigration records.[20] Salazar contends that one of the potential witnesses, Donald Hopkins,

---

[20] The Court notes that the first part of this claim (failure to subpoena and present several witnesses) is procedural defaulted at least as far as three of the potential witnesses. The reason for the procedural default is that the appellate court disposed of the claim on an independent and adequate state law ground. The Appellate Court declined to address the merits of the claim because Petitioner failed to supplement his post conviction petitions with any affidavits from three of the potential witnesses. The Appellate Court relied on the requirement that when a petitioner claims that his counsel should have called a particular witness, he must submit an affidavit from the persons who would have testified and cited *People v. Johnson*, 183 Ill. 2d 176, 192 (1998).

would have offered testimony to damage Madrigal's credibility.[21]  Another potential witness,

Harry Anderson, would have established that defendant was not the owner of the vehicle in

which the drugs were found.[22] Lastly, Petitioner argues that the testimony of the other witnesses

along with his passport and immigration records would have established that Petitioner was in

Columbia from August 1991 to February 1992.

Both the trial and the appellate court examined this claim of ineffective assistance of

counsel and concluded that Mr. Taseff did not provide ineffective assistance.  In reaching their

conclusions, both courts noted that Petitioner did not tell his attorney about being out of the

country until after his second trial. (*See* Resp't's Ex. J at PCR 92 (directly quoting from

Salazar's affidavit); Resp't's Ex. N at 8-9.)  Since Petitioner's attorney was not aware of the

claim that his client was out of the country, he could not be expected to introduce evidence to

support this assertion.  The Appellate Court also noted that more than two months before the

second trial, the State produced documentation indicated that Madrigal admitted to transacting

business with Salazar approximately one and a half years prior to August 12, 1993, therefore

placing the transactions around February 1992.

---

[21] Donald Hopkins was the individual who sold weapons to Manual Gallardo, who in turn sold some of these weapons to Madrigal. It is alleged that Hopkins would have testified that he sold the gun found in Becerril's possession on April 20, 1992. Petitioner asserts that Madrigal "falsely" testified that he sold Salazar that specific weapon on April 16, 1992. To support his claim, Salazar makes reference to an investigative report filed on 10/6/93. The report is clear that Madrigal informed the interviewing officers that guns were purchased and later sold "sometime in 1992, but he did not remember the exact date." Then, Madrigal was shown a photocopy of the receipt for ammunition from a store located across the street from Madrigal's place of business and which bore an April 16, 1992 date. Madrigal was asked if that "could have been the date he sold the guns" to Salazar. Only then he asserted that he "believed that was the date." The record before the Court does not contain the trial testimony of Madrigal and the Court also notes that Petitioner has not made an accurate and complete citation to the record.

[22] Harry Anderson allegedly has first hand knowledge that the owner of the vehicle, Petitioner's cousin, appeared in LaSalle County Court in the proceedings to forfeit his vehicle. Salazar alleges that Madrigal testified that the vehicle Petitioner was driving was purchased by Salazar himself. The Court again notes that there is no citation to the record to substantiate to what Madrigal had exactly testified. Also, the facts as described by the Illinois Appellate Court state that Madrigal had "obtained several vehicles for the defendant." First of all, obtaining is not the same as purchasing and second of all, purchasing does not necessarily equals ownership. Therefore, the testimony of Harry Anderson would not have destroyed Madrigal's credibility and it would not have added anything which was not already known: Salazar was not the owner of the car, but he was in lawful possession of the vehicle at the time of the search and subsequent arrest.

Moreover, "a lawyer's decision to call or not to call a witness is a strategic decision generally not subject to review." *United States v. Williams*, 106 F.3d 1362, 1367 (7th Cir. 1997). Even if the above testimonies had been offered, there is no reasonable possibility that their testimonies would have changed the outcome. Under *Strickland*, courts do not second-guess counsel with the benefit of hindsight, and can require only "a professionally competent defense, not . . . the best possible defense." *Holman*, 126 F.3d at 883.

In his reply, Salazar contends that the Appellate Court has failed to address his argument that his counsel was ineffective when he failed to present this evidence at a motion for a new trial or at the appellate level. Whether the counsel should have raised the issue of the passport at the post trial or appellate level depends on whether this evidence would have changed anything. This Court shares the opinion of the trial judge who had entertained this claim at the post conviction hearing. (*See* Resp't's Ex. J at PCR 94-95.) The Court also concludes that the evidence was not conclusive and does not directly contradict anything. The passport and the affidavits of the people from Columbia would have been used to impeach the testimony of Madrigal. However, Madrigal was vigorously cross-examined and his credibility was already attacked. As the Appellate Court has noted, Salazar's counsel conducted a meaningful testing of Madrigal's credibility and he extracted from this witness the following concessions: (1) he met with police officers on multiple occasions to discuss his testimony, (2) he initially lied to the police about obtaining the guns he later sold to Salazar, (3) he failed to produce business documents reflecting the work he said he performed for Petitioner, and (4) he did not report the income he said he received from Salazar to the Internal Revenue Service. (*See* Resp't's Ex. N at 8.)

As already mentioned, to show ineffectiveness of his counsel, Petitioner is required to

show that the result of the trial would have been different should the evidence of the passport and the testimonies of the witnesses have been introduced. He has not been able to carry that burden. There was evidence at trial that Petitioner was also known as Martin Arana and he had two driver licenses. Petitioner could also have had more than one passport or could have entered the country illegally, therefore the passport stamps do not necessarily prove that he was out of the country for the entire period between August 1991 and February 1992. The jury was presented with evidence of Petitioner speeding on the highway with 110 pounds of cocaine hidden in his car and a partner with a gun in his hat. The evidence of the passport and the alleged testimony of a few fellow Columbian countrymen would not have been enough evidence to contradict Madrigal and it would not have been enough evidence to produce a different outcome at trial. Accordingly, he cannot demonstrate that his trial counsel was constitutionally ineffective.

### 2. Appellate Counsel

Petitioner also raises ineffective assistance of appellate counsel. The following claims have not been procedurally defaulted and they will be addressed on the merits: 2 a) ineffective assistance of appellate counsel for failure to challenge the illegal arrest, 2 b) ineffective assistance of appellate counsel for failure to challenge prolonged detention of traffic stop, 2 c) ineffective assistance of appellate counsel for failure to challenge the voluntariness of the consent and 2 e) ineffective assistance of appellate counsel for failure to subpoena and present several witnesses and Salazar's passport and immigration records

Claims of ineffective assistance of appellate counsel are measured against the same *Strickland* standard as those dealing with ineffective assistance of trial counsel. *Howard v. Gramley,* 225 F.3d 784, 789- 90 (7th Cir. 2000). A petitioner who contends that appellate

counsel rendered ineffective assistance of counsel must show that the failure to raise an issue on direct appeal was objectively unreasonable and that the decision prejudiced petitioner in the sense that there is a reasonable probability that his case would have been remanded for a new trial or that the decision of the state trial court would have been otherwise modified on appeal. *Id.* at 790. However, it is not deficient performance to fail to raise an argument with no real hope of success. *Hough*, 272 F.3d at 898; *United States v. Davenport*, 986 F.2d 1047, 1049 (7th Cir. 1993); *Stone v. Farley*, 86 F.3d 712, 717 (7th Cir. 1996). Appellate counsel who files a merit brief need not, and should not, raise every nonfrivolous claim. Rather, appellate counsel should select from among the claims in order to maximize the likelihood of success on appeal. *Smith v. Robbins*, 528 U.S. 259, 288 (2000). While it is possible to bring an ineffective assistance of counsel claim based on counsel's failure to raise a particular issue, it is difficult to demonstrate that counsel was incompetent. *Id.*

As the Supreme Court noted, the hallmark of effective appellate advocacy is to winnow out weaker arguments on appeal and focus on the issues more likely to prevail. *Smith v. Murray*, 477 U.S. 527, 536 (1986). Appellate counsel need not, indeed should not, take a "kitchen sink" approach, raising every conceivable issue. *Howard*, 225 F.3d at 791. There are no perfect trials, and trial judges have considerable discretion in their handling of the courtroom proceedings. Throwing in every conceivable claim of error, cluttering the brief with issues having no chance of success, is merely distracting, and is not the mark of a competent attorney. *Id.*

In this case, Salazar's appellate counsel produced a well-argued, twenty-five-page brief raising three main issues and some additional sub-issues. Salazar asserts that his appellate counsel was ineffective because he did not incorporate into the appellate brief certain challenges related to the legality of the arrest, the duration of the traffic stop, the voluntariness of the

consent and his alleged absence from the United States during August 1991 and February 1992. When counsel fails to raise arguments on appeal, the Seventh Circuit compares these issues with those that are not raised, and "[o]nly when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome." *Gray,* 800 F.2d at 646. Performance is deemed insufficient when counsel omits a "significant and obvious issue" without a legitimate strategic reason for doing so. *Mason,* 97 F.3d at 893..

On direct appeal, Salazar's counsel raised the following arguments: (1) the trial court erred in denying the motion to suppress because the law enforcement officers exceeded the scope of the consent when they drilled holes into the car and removed the rear bumper of the vehicle to search for suspected controlled substances, (2) the State failed to show that the troopers had probable cause to believe the car contained contraband sufficient to justify the intrusive search, (3) evidence was legally insufficient to support the conviction, and (4) the offense of unlawful possession of a controlled substance with the intent to distribute should be vacated as a lesser included offense of controlled substance trafficking. Petitioner's claims of illegal arrest, prolonged detention of the traffic stop, voluntariness of the consent, and evidence that he was allegedly out of the country for a certain period of time are not clearly more meritorious than the other issues raised on appeal. Therefore, his counsel's conduct was not objectively unreasonable under the *Strickland* framework. Moreover, because the omitted issues would not have resulted in a reversal of the conviction, or an order for a new trial, *Mason,* 97 F.3d at 893, the Court finds no prejudice. Noting that this Court must give a "strong presumption that counsel rendered reasonably effective assistance," *United States v. Limehouse,* 950 F.2d 501, 503 (7th Cir. 1991), it concludes that Petitioner has not met this high burden, and his ineffective assistance of appellate counsel claims are therefore denied.

Therefore, upon review of the trial and appellate record, the Court concludes that Petitioner has not met his burden to show that the state court's adjudication of his claims involved an "unreasonable application" of the ineffective assistance of counsel standard under the framework enunciated in *Strickland*. The Court also finds that Salazar's trial and appellate counsel's conduct was not deficient and that any alleged deficiency did not prejudice the Petitioner. Even if Petitioner's "counsel was not perfect, [and] with the benefit of hindsight, it is easy to indulge the temptation to question his decisions during trial," *Todd v. Schomig*, 283 F.3d 842, 850 (7th Cir. 2001). Petitioner did not suffer prejudice at the hands of counsel that would have changed the outcome of the trial. *Williams*, 529 U.S. at 391. Therefore, habeas relief based on ineffective assistance of trial and appellate counsel must be denied.

## B. Sufficiency of the Evidence

Lastly, Salazar's eighth ground of his petition for a writ of habeas corpus is that the evidence was legally insufficient to support his conviction. His argument is based on an Illinois Appellate Court case which held that the State failed to prove that defendant brought or caused to be brought any controlled substance into Illinois as required for conviction for controlled substances trafficking. *People v. Izquierdo*, 262 Ill. App. 3d 558, 561, 634 N.E.2d 1266, 1269 (4th Dist. 1994). Petitioner has again failed to apply the proper habeas standards.

When analyzing a question of allegedly insufficient evidence in a habeas proceeding, a court is not at liberty to "make its own subjective determination of guilt or innocence." *Jackson v. Virginia*, 443 U.S. 307, 319 n.13 (1979). Instead, the proper question to be asked is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443

U.S. at 319. Since the sufficiency of evidence issue is a mixed question of law and fact, "a writ

of habeas corpus may be issued for evidence insufficiency only if the state courts have

unreasonably applied the *Jackson* standard." *Gomez v. Acevedo,* 106 F.3d 192, 199 (7th Cir.

1997), *rev'd on other grounds sub nom. Gomez v. DeTella,* 522 U.S. 801 (1997). If the state

courts provided a fair process and engaged in reasoned, good-faith decision-making when

applying the *Jackson* test, then a federal court cannot second-guess their determination of

sufficiency of evidence. *Gomez,* 106 F.3d at 199. The habeas reviewing court cannot choose the

evidence it prefers to emphasize or make its own credibility determinations, and it cannot

mischaracterize testimony of certain witnesses. *Ford v. Ahitow,* 104 F.3d 926, 939 (1997). The

federal habeas court must give deference to the state court's determination of credibility. *Biskup*

*v. McCaughtry,* 20 F.3d 245, 251 (1994).

The state appellate court in this case used the proper standard when evaluating

Petitioner's claim of legally insufficient evidence. The court set forth the evidence presented at

trial against Petitioner.

> In the instant case, Jorge Madrigal testified to having built a series
> of hidden compartments in vehicles at the defendant's request,
> including the compartment found in the Honda the defendant was
> driving on I-80 on May 15, 1992. He further testified that he sold
> to the defendant the gun found on Becerril and the gun found in
> the hidden compartment. These facts, in particular, combined with
> all the other evidence presented by the State, are more than
> sufficient to support the defendant's convictions for controlled
> substance trafficking and possession with intent to deliver.
> Knowledge of the presence of the cocaine in the hidden
> compartment and that the defendant knowingly brought the
> cocaine into Illinois [from California] could readily be inferred
> from the facts presented. *See, e.g., People v. Sesmas,* 227 Ill. App.
> 3d 1040, 591 N.E.2d 918 (1992).

Therefore, the Illinois Appellate Court examined the evidence against Petitioner and

employed the proper *Jackson* standard in its analysis. Moreover, the court's application of the

*Jackson* standard was within the bounds of reasonableness. Therefore, Petitioner's habeas claim based on legally insufficient evidence is denied.

## CONCLUSION

For the reasons stated above, Petitioner Jose Salazar's petition for a writ of habeas corpus is denied in its entirety.

**SO ORDERED**                                        **ENTERED:**  9-5-02

Hon. Ronald A. Guzmán
United States Judge